**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHANNA SAXON,**

                              **Plaintiff,**

        **vs.**                                        **1:08-CV-00178**
                                                       **(NAM)**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

Irwin M. Portnoy & Associates, P.C.           Irwin M. Portnoy, Esq.
542 Union Avenue
New Windsor, New York 12550
_Attorneys for Plaintiff_

Richard Hartunian                        Tomasina DiGrigoli, Esq.
United States Attorney                   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

Office of the General Counsel, Region II       Barbara L. Spivak, Esq.
Social Security Administration                 Chief Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
_Attorney for Defendant_

**Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

        Plaintiff Shanna Saxon brings the above-captioned action pursuant to 42 U.S.C. § 405(g)

and § 1381 of the Social Security Act, seeking a review of the Commissioner of Social Security's

decision to deny her application for disability benefits.

## II.     BACKGROUND

On February 20, 2002 and October 19, 2004, plaintiff applied for SSI and DIB.[1]  On July 27, 2004, ALJ Thomas P. Zolezzi issued a decision denying plaintiff's February 2002 application for benefits.  (*See* Complt., App. 1).[2]  On November 3, 2004, the Appeals Council issued a decision remanding the case to the ALJ for further proceedings.  In addition, the Appeals Council directed the ALJ to consolidate the February 2002 action with plaintiff's subsequent claim filed on October 19, 2004. (*Id*. at App. 2).  On July 12, 2005, the ALJ issued a decision denying both applications.  (*Id*. at App. 4).  On August 4, 2005, the Appeals Council provided plaintiff with a notice that denied plaintiff's request for review of that decision and further informed plaintiff that she was entitled to seek judicial review by filing a complaint in the United States District Court within 60 days of receipt of the notice. (*Id*. at App. 5).

Prior to the Appeals Council denial, on July 19, 2005, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB").  (T. 63)[3].  On July 27, 2005, plaintiff filed an application for Supplemental Security Income ("SSI").  Plaintiff was 23 years old at the time of her application and alleged an inability to work due to depression, bipolar disorder, anxiety and schizophrenia.  (T. 66).  Plaintiff claimed that her condition began on January 1, 1992.  (T. 63).  Plaintiff received an I.E.P. (Individualized Education Program) diploma and her past work consisted of employment as a cashier and babysitter.  (T. 98-99, 286).

---

[1] The record does not contain copies of either application.

[2] ALJ Zolezzi's decision is not part of the Administrative Transcript herein, however, a copy of his decision was annexed to plaintiff's complaint.

[3] "(T. )" refers to pages of the administrative transcript, Dkt. No. 8.

On November 4, 2005, plaintiff's applications were denied and plaintiff requested a

hearing by an ALJ which was held on January 9, 2007 and continued on March 22, 2007. (T. 55-

59, 283, 298).   On March 30, 2007, the ALJ issued a decision denying plaintiff's claim for

disability benefits and supplemental security income.  (T. 15-25).  The Appeals Council denied

plaintiff's request for review on October 24, 2007, making the ALJ's decision the final

determination of the Commissioner. (T. 7).  This action followed.

## III.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A).  There is a five-step analysis for evaluating disability

claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2)
> that he has a 'severe impairment,' (3) that the impairment is not one [listed in
> Appendix 1 of the regulations] that conclusively requires a determination of disability,
> and (4) that the claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type of work the
> claimant can do." The claimant bears the burden of proof on the first four steps, while
> the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131.  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On March 30, 2007, the ALJ issued a decision finding that plaintiff was not disabled from July 13, 2005 through the date of the decision. (T. 24).  Prior to conducting the five-step analysis, the ALJ discussed plaintiff's prior applications for DIB and SSI.  The ALJ noted that plaintiff's prior application was denied on July 12, 2005, in an opinion by a different ALJ.  (T. 16).  The ALJ, "decline[d] to reopen the earlier application, filed on February 20, 2002, which adjudicated the periods from January 1, 1992 through July 12, 2005, because good cause has not been found".  (T. 16).  The ALJ concluded, "[t]he remainder of the decision will address the issues as they pertain to the period beginning July 13, 2005, the day after the previous ALJ decision".  (T. 16).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since July 13, 2005, the day after the previous unfavorable ALJ decision.  (T. 18).  At step two, the ALJ concluded that plaintiff suffered from a history of back pain, affective disorder, anxiety disorder and personality disorder which qualified as "severe impairments" within the meaning of the Social Security Regulations (the "Regulations").  (T. 18).  At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations.  (T. 18).  The ALJ found that plaintiff had the residual functional capacity ("RFC") to "perform work at a medium level of exertion: that is occasionally lifting and carrying up to 50 pounds and frequently lifting and carrying up to 25 pounds; as well as standing, walking or sitting six hours in an eight-hour workday.  In addition the claimant is

limited to simple entry-level work in a low stress environment in which she would not be required to do planning, report writing, supervising or maintain high production quotas; performing tasks with reading ability consistent with her IEP certificate; with little or no interaction with the public; with only occasional interaction with coworkers; and with infrequent changes in the work environment." (T. 18).

At step four, the ALJ concluded that plaintiff did not have the residual functional capacity to perform any of her past relevant work. (T. 23). The ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy such as work as a laundry worker/sorter and cleaner/housekeeper. (T. 24). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 24).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred when he declined to "reopen" plaintiff's prior applications for SSI and DIB; (2) the ALJ erred when he failed to obtain and review plaintiff's medical records from her prior applications for SSI and DIB; (3) the ALJ failed to explain why plaintiff's condition did not meet or equal a listed impairment; (4) the ALJ failed to consider the opinion of plaintiff's treating sources; (5) the ALJ failed to properly assess plaintiff's credibility; and (6) the ALJ did not meet his burden of proof at the fifth step of the sequential evaluation. Plaintiff requests a remand solely for the calculation of benefits. (Dkt. No. 10).

**A.    Prior Applications**

Plaintiff argues that the ALJ erred when he failed to obtain records relating to plaintiff's February 2002 and October 2004 applications for SSI and DIB.  Plaintiff claims that the ALJ should have obtained the prior records to determine whether the applications should be reopened.  Plaintiff further contends that the ALJ should have reviewed the entire file to "obtain a longitudinal" assessment of plaintiff's condition.   Defendant claims that the ALJ's discretionary denial is not subject to judicial review.  Moreover, defendant argues that the ALJ properly limited his review to evidence pertaining to plaintiff's current applications.

With respect to judicial review of the Secretary's decisions, Section 405 provides, in pertinent part:

> (g) Judicial Review
> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days . . .
>
> (h) Finality of Secretary's Decision
> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [section 1331 et seq.] of Title 28 to recover on any claim arising under this subchapter.

*Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983).

Where a claimant seeks to reopen a claim where a final decision has been rendered, the Commissioner may refuse such a request under the doctrine of *res judicata*.  *Dunn v. Astrue*, 2010 WL 376390, at *3 (W.D.N.Y. 2010).  The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits.

*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Califano v. Sanders*, 430 U.S. 99, 107-09 (1977)).  There are two circumstances in which the federal courts may review the Commissioner's decision not to reopen a disability application: (1) where the Commissioner has constructively reopened the case; and (2) where the claimant has been denied due process.  *Byam*, 336 F.3d at 179.   The ALJ "constructively reopens" a decision if he reviews the entire record and renders a decision on the merits.  *Id*. at 180; *see also Owens v. Apfel*, 2004 WL 2725083, at * 3 (S.D.N.Y. 2004) (citations omitted).  A matter is not constructively reopened when the ALJ merely discusses prior proceedings and evidence to describe a claimant's background.  *Grant v. Shalala*, 1995 WL 322589, at *7 (W.D.N.Y. 1995).

Here, plaintiff did not seek judicial review of the Appeals Council decision to deny her request for review of ALJ Zolezzi's denial of her February 2002 and October 2004 applications. During the Administrative Hearing on the current application, ALJ Stephan addressed ALJ Zolezzi's prior decision.  ALJ Stephan specifically declined to reopen plaintiff's prior applications because good cause had not been established.  (T. 16).  ALJ Stephan did not review the prior record and specifically limited his review to evidence after the prior applications were rejected.

Plaintiff does not argue that ALJ Stephan "constructively reopened" the prior decision and, in fact, plaintiff concedes that ALJ Stephan did not obtain the prior file.  Thus, the ALJ could not have "constructively reopened" the case.  *See Adams ex rel. Williams v. Barnhart*, 2003 WL 102824, at *11 (S.D.N.Y. 2003) (holding that because the ALJ did not have the plaintiff's entire prior record, he could not have constructively reopened the prior applications); *see also Owens*, 2004 WL 2725083, at *3 (the plaintiff could not allege that any of the administrative record of the

7

prior claim was reviewed during the disposition of the plaintiff's current claim given that the prior record was lost or destroyed.  Moreover, plaintiff has not set forth any constitutional challenge.  Based upon the record and ALJ Stephan's reasoning, the two exceptions do not apply and *res judicata* precludes this Court from reviewing the ALJ's decision not to reopen the prior applications.  *See Latona*, 707 F.2d at 81.

Moreover, based upon the foregoing analysis, plaintiff's argument regarding the ALJ's duty to obtain the "entire prior file" to have a "longitudinal record" lacks merit.  Indeed, if ALJ Stephan obtained and reviewed the entire file, he would have "constructively reopened" the prior applications thereby waiving the *res judicata* argument he asserted in his opinion.

**B.      Meet or Medically Equals a Listed Impairment - Listing §12.05**

Plaintiff claims that she suffers from an impairment that meets the level described in Listing § 12.05.[4]  Impairments listed in Appendix 1 of the Regulations "are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment".  *Aviles v. Barnhart*, 2004 WL 1146055, at *6 (E.D.N.Y. 2004). If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled.  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995).  For purposes of Social Security benefits, as an adult, in order to be considered disabled due to mental retardation certain criteria are necessary.  *Meashaw v. Chater*, 1997 WL 16345, *3 (N.D.N.Y. 1997).

Listing 12.05 states, in relevant part[5]:

---

[4] Plaintiff vaguely claims, "[a]rguably, she may very well have met 12.02 and/or 12.03 of the Listings as well".  However, plaintiff provides no argument and cites to no evidence to support this claim.

[5] While plaintiff does not specify which subsection of 12.05 applies to her impairments, based upon the arguments in her brief, the Court assumes plaintiff is claiming impairments equivalent to Listing 12.05C and/or 12.05D.  (Dkt. No. 10, p. 23-24).

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

.     .     .

C.      A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

D.      A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Listing § 12.05C is equivalent to Listing § 12.05D.  *Edmond v. Barnhart*, 2006 WL 2769922, at *8 (W.D.N.Y. 2006)

Plaintiff argues that her impairments meet or medically equal Listing 12.05 because: (1) she was not able to engage in competitive work; (2) her IQ scores are within the Listing level; (3) her medication caused side effects impairing her ability to maintain attention to tasks; and (4) she was treated for a chronic illness with "heavy drugs".  Moreover, plaintiff claims that she suffers from schizophrenia and/or depression which are "severe" and satisfy the second prong of § 12.05(C). (Dkt. No. 12, p. 15).   Plaintiff claims that Dr. Payne's opinion support this conclusion.

Even assuming that the evidence supports plaintiff's argument that she suffered from

"deficits in adaptive functioning initially manifested" before the age of 22, plaintiff does not cite to any portion of the record to support her claim that her, "full scale IQ was within the five-point range required by the Listing". (Dkt. No. 10, p. 23). Indeed, the medical record is devoid of any evidence that plaintiff underwent any IQ testing prior to, or after, age 22. The Court has conducted an exhaustive review of the record and finds no evidence of any IQ scores or testing. Based upon the record, plaintiff's impairments do not meet the first prong of Listing 12.05C.

In the decision, the ALJ addressed Listings 12.04 (affective disorders), 12.06 (anxiety disorders) and 12.08 (personality disorders). (T. 18). The ALJ concluded that the claimant did not meet these listings as the claimant, "has mild limitations in activities of daily living; moderate to marked limitations in social functioning; mild difficulties maintaining concentration, persistence and pace; and no episodes of deterioration or decompensation of extended duration". (T. 18). Plaintiff does not present any argument challenging this analysis. Accordingly, the Court finds that substantial evidence exists to support the ALJ's determination that plaintiff's impairments did not meet or equal any Listing.

## C.   Opinion/Medical Evidence

Plaintiff argues that the ALJ improperly rejected the opinions of her treating physician, Dr. Heller[6] and the opinions of Ani Shahinien, a Certified Social Worker ("C.S.W.").

### 1.   Medical Record

In January 2005, plaintiff began treating with Dr. Heller at Ellis Hospital.[7] On May 3, 2005 and May 25, 2005, Dr. Heller completed a Mental Impairment Questionnaire. (T. 157-168).

---

[6] Dr. Heller's full name is not included in the record.

[7] While the ALJ did not discuss these records, the Court provides a summary of Dr. Heller's records in the context of plaintiff's arguments regarding the application of the Treating Physician Rule.

Dr. Heller diagnosed plaintiff with major depression and bipolar disorder.  (T. 162).  Dr. Heller

noted that plaintiff suffered from depressive symptoms, auditory hallucinations, and a lack of

anger management skills that interfered with her functional abilities.  Dr. Heller prescribed

Risperdal and Cymbalta.[8]  (T. 162).  Dr. Heller discussed plaintiff's "functional limitations"

noting that plaintiff's abilities in the following areas were either "very limited" or "poor": her

ability to understand/remember instructions; carry out instructions; maintain concentration;

interact appropriately with others; and to function at a continuous working pace.  (T. 162).

Plaintiff was moderately limited in following simple decisions but was able to maintain personal

hygiene.  (T. 162).  Dr. Heller opined that plaintiff was unable to function in the work field or

society. (T. 163).  Plaintiff continued to treat with Dr. Heller until August 2005.

     In August 2005, due to Dr. Heller's departure, plaintiff began treating with Ani Shahinien,

C.S.W. and Mary Martin, NPP "for medication".[9]  (T. 171).  Plaintiff treated with Ms. Shahinien

from August 2005 until December 2006.  In January 2006, Ms. Shahinien and NP Martin

completed a Psychiatric Disability Medical Report Form for VESID. (T. 268).  Ms. Shahinien

noted that plaintiff inconsistently reported auditory hallucinations, had a "chaotic" lifestyle with

lack of support and an inability to set limits with abusive personal relationships. (T. 268).  NP

Martin last examined plaintiff on January 11, 2006 and found plaintiff to be depressed, irritable,

vague about her auditory hallucinations but well groomed.  (T. 269).  Ms. Shahinien and NP

Martin opined that plaintiff was unable to work due to interpersonal skills, frustration with

---

[8] Risperdal is used as an antipsychotic agent. *Dorland's Illustrated Medical Dictionary*, 1674 (31st ed. 2007). Cymbalta is used in the treatment of major depressive disorder. *Id*. at 465, 580.

[9] NPP is an abbreviation for Psychiatric Nurse Practitioner. http://www.medilexicon.com (last visited January 3, 2011).

direction and irritability. (T. 268).  While plaintiff was inconsistent with her therapy and medication management in the past, she recently made more of an effort to be compliant. (T. 269).  Plaintiff was diagnosed with major depressive disorder. (T. 268). Plaintiff was prescribed Risperadol, Paxil and Seroquel.[10]  (T. 269, 270). Plaintiff reported that she was unable to work, but Ms. Shahinien and NP Martin were, "unable to [make that] determin[ation] based upon limited contact and follow up". (T. 269).  Ms. Shahinien estimated plaintiff's work ability as "fair". (T. 269).

## 2.    Treating Physician Rule

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so.  *Barnett v. Apfel*, 13 F.Supp.2d 312, 316 (N.D.N.Y. 1998).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (remanding case where the ALJ failed to explain the weight, if any, assigned to the treating physician's opinions) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F.App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  The less

---

[10] Paxil is used to treat depressive, obsessive-compulsive, panic, and social anxiety disorders; administered orally.  *Dorland's* at 1405, 1419.  Seroquel is an antipsychotic medication used in the treatment of schizophrenia. *Id.* at 1590, 1723.

consistent an opinion is with the record as a whole, the less weight it is to be given. *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Soc. Sec.*, 249 F.App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

**a.   Dr. Heller**

In the decision, the ALJ referred to plaintiff's 2005 treatment and noted:

> According to the 2005 records from the claimant's treating sources she was diagnosed with depressive disorder with psychosis, personality disorder and rule-out bipolar disorder. According to the notes she was not always compliant with treatment: did not follow through with therapy, and did not use psychotropic medication as prescribed. At that time the claimant also reported improvement in mood and controlled hallucinations when using the psychotropic medication prescribed. (T. 20).

The ALJ did not identify the "treating sources" or "the notes". The ALJ cited to "Exhibit B4F" of the Administrative Transcript. This portion of the transcript contains Dr. Heller's May 3, 2005 and May 25, 2005 Mental Health Questionnaires. The record does not contain any evidence of any treatment by Dr. Heller after the date of ALJ Zolezzi's prior determination. Moreover, Dr.

Heller did not provide any opinion after May 2005.  Plaintiff does not acknowledge or address this issue in the brief but rather, argues that because Dr. Heller was a treating physician, his prior opinions are entitled to controlling weight.  The Court disagrees.  While Dr. Heller was a "treating physician" as defined by the Regulations, the Court finds that substantial evidence exists to support the ALJ's refusal to discuss Dr. Heller's May 2005 opinions or to assign those conclusions controlling weight.  As previously discussed, the ALJ did not constructively reopen plaintiff's prior applications.  Dr. Heller did not provide any opinion or treatment during the time period at issue herein.  *See Dunn*, 2010 WL 376390, at *6 (the ALJ properly refused to give significant weight to the treating physician's opinion because he examined the plaintiff outside the disability period and did not provide a retrospective opinion).  Dr. Heller's treatment and opinions were properly excluded from the ALJ's discussion of the present applications.  Indeed, if the ALJ had discussed and assigned controlling weight to Dr. Heller's opinions, he would have constructively reopened the prior applications.

     **b.**    **Ani Shahinien, C.S.W.**

Plaintiff concedes that Ms. Shahinien, is not an "acceptable medical source", however, plaintiff argues that the ALJ had a duty to evaluate her opinion pursuant to SSR 06-03p. Opinions from medical sources that are not considered acceptable medical sources are "important and should be evaluated on key issues such as impairment severity and functional effects." *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. 2009) (quoting SSR 06-03p).  The record in this matter contains evidence of treatment by a certified social worker.  Social workers are defined as "other sources".   Social Security Ruling 06-03p provides:

> In addition to evidence from "acceptable medical sources," we may
> use evidence from "other sources," as defined in 20 CFR 404.1513(d)

14

and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:

• Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . ;

Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006).

The Regulations provide that the Secretary will consider, "evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." *See* 20 C.F.R. § 404.1513(e). In weighing the opinions of "other sources", the ALJ must use the same factors for the evaluation of the opinions from "acceptable medical sources" enumerated in 20 C.F.R. 404.1527(d). *Canales v. Comm'r of Soc. Sec.*, 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010). The ALJ is free to conclude that the opinion of a licensed social worker is not entitled to any weight, however, the ALJ must explain that decision. *Id*. Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician. *Anderson*, 2009 WL 2824584, at *9 (citing SSR 06-03p, 2006 WL 2329939, at *5).

In the decision, the ALJ did not acknowledge plaintiff's treatment with Ms. Shahinien and NP Martin and failed to assign any weight to their January 2006 opinion. The ALJ summarily concluded, " [t]he claimant's treating psychiatrist has not provided an overall assessment of her

functional abilities or limitations".  (T. 21).  Ms. Shahinien is not an "acceptable medical source",

however, from August 2005 until December 2006, Ms. Shahinien treated plaintiff 27 times at

Ellis Hospital.  Ms. Shahinien's records and opinions are important as she was the only treating

source.  *See Bergman v. Sullivan*, 1989 WL 280264, at *3 (W.D.N.Y. 1989).  Here, the ALJ

should have considered Ms. Shahinien's records as "other source" evidence.  *See White v.

Comm'r of Soc. Sec.*, 302 F.Supp.2d 170, 176 (W.D.N.Y. 2004) (citing 20 C.F.R. § 416.913(a); §

416.913(d)) (consideration of social worker's report was particularly important given that he was

sole source that had a regular treatment relationship with the plaintiff).  While the ALJ is

empowered with the discretion to afford less than controlling weight, or even no weight, to the

opinion of "other sources", the ALJ has a duty to address and discuss the opinion.  Here, the ALJ

erred when he failed to mention of Ms. Shahinien's opinion.  *See Lopez v. Barnhart*, 2008 WL

1859563, at *15 (S.D.N.Y. 2008) ("[the social worker's] observations would be relevant on the

issue of the intensity and persistence of [the] plaintiff's symptoms, which in turn affect [the]

plaintiff's capacity for work and hence the ultimate disability determination).

On remand, the ALJ must address Ms. Shahinien's opinion and provide an explanation of

what weight, if any, he assigns to that opinion.

**D.      Credibility**

Plaintiff claims that the ALJ's credibility analysis is not supported by substantial evidence

and did not comply with the factors set forth in SSR 96-7p. (Dkt. No. 10, p. 24).  The

Commissioner contends that the ALJ reasonably concluded that plaintiff's subjective symptoms

were not entirely credible.  Defendant argues that the ALJ properly found that plaintiff's claimed

psychiatric symptoms were refuted by her treatment records and inconsistent with her activities

and lifestyle.  (Dkt. No. 11, p. 21-22).

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell*, 177 F.3d at 135 (holding that an ALJ is in a better position to decide credibility).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(I)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence.  *See* SSR 96-7p, 1996 WL 374186, at *2 (SSA 1996).  One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.  SSR 96-7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone v. Apfel*, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987)) (citations omitted). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007).

In this case, the ALJ determined:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (T. 20).

The ALJ further noted, "[m]ore recent records from Ellis Hospital call into question the claimant's credibility with respect to her psychiatric symptoms". (T. 20).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ applied the correct legal standard, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. The ALJ thoroughly discussed plaintiff's psychiatric complaints including the frequency and intensity of her symptoms. The ALJ also discussed plaintiff's daily activities, noting that plaintiff lived with her three-year-old daughter in an apartment and that she was capable of caring for her home and her child. (T. 20). The ALJ noted that plaintiff was unable to take her medications due to pregnancy and discussed plaintiff's treatment with her therapists. (T. 20). Consequently, the Court finds that the ALJ properly assessed the factors enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vi) and § 416.929(c)(3)(i)-(vi).

In this case, taken as a whole, the record supports the ALJ's determination that plaintiff's

claims were not entirely credible.  The Court finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of consistent and disabling pain. The ALJ adequately specified the reasons for discrediting plaintiff's statements.  Accordingly, the ALJ's analysis of the record and decision as to plaintiff's credibility was based on substantial evidence.

## E.    Vocational Expert

As discussed, the ALJ failed to properly assess the medical evidence, thus the findings made at the fifth step of the sequential analysis are affected.  The Court has already determined that remand is necessary for further proceedings with respect to the proper application of the Regulations with respect to Ms. Shahinien's records. On remand, an analysis may require the testimony of a vocational expert regarding the effect that any nonexertional impairments may have on the plaintiff's ability to perform basic work activities. *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 487 (W.D.N.Y. 2004).

## F.    Remand or Reversal

Plaintiff contends that the Commissioner's decision should be reversed rather than remanded because she presented substantial evidence of disability.  The Court disagrees.

The court has the power to affirm, modify, or reverse the decision of the Commissioner upon the pleadings and transcript of the record, "with or without remanding the cause for a rehearing ".  42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).  Reversal for payment of benefits is appropriate "[w]here the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose".  *Martinez v. Barnhart*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) (quoting *Parker v. Harris*, 626 F.2d 225, 235

(2d Cir. 1980)).   The Second Circuit has held that "where application of the correct legal principles . . . could lead to only one conclusion, there is no need to require agency reconsideration." *Matovic v. Chater*, 1996 WL 11791, at *6 (S.D.N.Y. 1996) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

In the case at hand, the ALJ's evaluation of the medical evidence was improper. However, this conclusion does not entitle plaintiff to an outright reversal for calculation of benefits.  Upon further review, the ALJ may determine that substantial evidence does not support the conclusion that plaintiff suffered a disability as defined by the Social Security Act.  It is for the ALJ, on remand, to re-weigh plaintiff's medical evidence and assess all of the factors in 20 C.F.R. § 404.1527(d)(2).   The ALJ must then reassess plaintiff's RFC and properly analyze step five.  If a vocational expert is called to testify, the ALJ must present hypothetical questions that accurately state plaintiff's RFC and limitations.  The determinations needed at steps four and five cannot be made by this Court, given its limited jurisdiction under 42 U.S.C. § 405(g)*.  See Dioguardi v. Comm.'r of Social Sec.*, 445 F.Supp.2d 288, 300 (W.D.N.Y. 2006).

**IV.** **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is

further

    **ORDERED** that the Clerk of Court enter judgment in this case.

    **IT IS SO ORDERED.**

Date:  March 4, 2011

_____
Norman A. Mordue
Chief United States District Court Judge